# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

        Plaintiff,             :        Case No. 3:05-cr-184

                                          District Judge Walter Herbert Rice

     -vs-                           Magistrate Judge Michael R. Merz

                         :

MARK J. THORNTON,

        Defendant.

---

# REPORT AND RECOMMENDATIONS

---

Defendant Mark Thornton brought this case under 28 U.S.C. § 2255 to obtain relief from his conviction in this Court and consequent life sentence on drug trafficking charges.

## Procedural History

Thornton and co-Defendant Nirvana Martin were indicted December 14, 2005 (Doc. No. 20). Thornton's first attorney, William Daly, negotiated a plea in early 2006, but Thornton rejected the plea and at his request, attorney Charles Slicer[1] was substituted as his trial attorney (Doc. Nos. 49, 50).

Slicer immediately filed a Motion to Suppress (Doc. No. 51) which required both a hearing and briefing. In May 2007 District Judge Rice granted the Motion in part and denied it in part with extensive findings of fact (Decision and Entry, Doc. No. 70). Among other things,

---

[1] Slicer was retained in April 2006, but appointed under the Criminal Justice Act July 12, 2007 (Doc. No. 87).

Judge Rice found Thornton was present when Dayton Police officers executed a search warrant at 2316 Eastview Avenue.  The warrant did not authorize a search of Thornton, so the $3,444 in cash and four cellphones that were seized from his person were suppressed.  *Id.*  at PageID 422. Otherwise, Judge Rice found Thornton had no legitimate expectation of privacy at the searched location, so no other evidence, including the large quantities of both powdered and crack cocaine and items associated with the sale of those drugs were not suppressed.

Immediately after deciding the Motion to Suppress, Judge Rice set a schedule which contemplated trial beginning July 17, 2007 (Order, Doc. No. 72).  In August 2007 Thornton again rejected a plea agreement and trial was re-set for September 18, 2007 (Doc. No. 94).  Trial did not proceed on that day because Thornton sought and was granted a psychiatric examination on his competency to stand trial (Doc. Nos. 131, 132).  The next day Slicer moved to withdraw, stating in part that Thornton kept asking questions about the search and would "not communicate with counsel regarding possible defenses or trial matters." (Doc. No. 133).  Judge Rice denied the motion and trial commenced October 3, 2007.  On October 17, 2007, the jury found Thornton guilty of conspiring to distribute in excess of five kilograms of powder cocaine and fifty grams of crack cocaine as charged in Count 1 of the Indictment, not guilty of possessing fifty grams of crack with intent to distribute as charged in Count 2, guilty of possessing in excess of five hundred grams of cocaine as charged in Count 3, and guilty of possessing a firearm in furtherance of a drug trafficking crime as charged in Count 5 (Verdict, Doc. No. 149).

Judge Rice found that the United States had satisfied its burden under 21 U.S.C. § 851 for an enhanced sentence (Doc. No. 167).  On March 11, 2008, Thornton was sentenced to life imprisonment on Count 1 (the mandatory sentence given Thornton's prior drug convictions), a concurrent 264 months on Count 3, and a consecutive 60 months on the firearm count (Doc. Nos.

171, 172).  After filing a Notice of Appeal on Thornton's behalf, Slicer was permitted to withdraw (Doc. Nos. 174, 175).

The Sixth Circuit affirmed the conviction.  *United States v. Thornton*, 609 F.3d 373 (6th Cir. 2010).  Co-defendant Nirvana Martin had pled guilty and testified against Thornton; the Sixth Circuit found admission of his testimony was proper.  *Id.*  The United States Supreme Court denied certiorari May 24, 2010.  *Thornton v. United States*, 560 U.S. 934 (2010).

Thornton filed his § 2255 Motion nearly a year later on April 8, 2011 (Doc. No. 213). Three weeks later he filed a Motion to Amend or Supplement (Doc. No. 221).  In December 2011 he moved to amend or supplement again (Doc. No. 237).  The Magistrate Judge granted the first motion to amend (Doc. No. 239) and granted in part the second motion (Doc. No. 240).[2]  On March 15, 2012, the Magistrate Judge appointed counsel at Thornton's request (Doc. No. 242). After a conference with counsel, the Court set an evidentiary hearing for October 22, 2012, and ordered Thornton's counsel to file "an amended motion to vacate incorporating the amendments already allowed."  (Doc. No. 244, PageID 2565.)  In September 2012 counsel requested more time to investigate and prepare (Doc. Nos. 245, 246).  It was not until April 14, 2013, that a new Motion for Evidentiary Hearing was filed (Doc. No. 252).  Finally on July 26, 2013, counsel filed the ordered Amended Motion to Vacate which accumulated the various amendments the Court had permitted (Doc. No. 266).  An evidentiary hearing on Grounds for Relief Three, Four, Five, and Six was held September 30 and October 1, 2013 (Transcripts, Doc. Nos. 280, 281). With various extensions of time agreed to by counsel, the case became ripe for decision June 2, 2014 (See Doc. No. 290).

---

[2] Part of the proposed amendment was barred by the one-year statute of limitations applicable to § 2255 cases.

Thornton pleads the following grounds for relief:

1. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE EXCULPATORY INFORMATION IN THE SEARCH WARRANT.

2. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND/OR INTERVIEW THE GOVERNMENT'S KEY WITNESS PRIOR TO TRIAL.

3. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND/OR INTERVIEW POSSIBLE DEFENSE WITNESSES.

4. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PREPARE OR ALLOW PETITIONER TO TESTIFY AT TRIAL CREATING A CONFLICT OF INTEREST.

5. TRIAL COUNSEL WAS INEFFECTIVE DURING TRIAL PROCEEDINGS FOR PRESENTING A DEFENSE OF BUYER AND SELLER RELATIONSHIP WITHOUT ANY PRETRIAL PREPERATION [sic] AND WITHOUT PRESENTING ANY EVIDENCE AND/OR WITNESSES IN SUPPORT.

6. COUNSEL'S THREATS TO WITHDRAW IF PETITIONER PROCEEDED TO TRIAL CREATED A CONFLICT OF INTEREST AND RENDERED COUNSEL INEFFECTIVE FOR FAILING TO PREPARE A DEFENSE.

7. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE DEFECTIVE INDICTMENT IN REGARDS TO THE CONSPIRACY COUNT WHERE A VARIANCE OCCURRED.

8. TRIAL COUNSEL FAILED TO REQUEST A SEARS RULE INSTRUCTION WHEN AN INDIVIDUAL CONSPIRES TO VIOLATE THE LAW.

9. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO MULTIPLICITY AND/OR DUPLICITY IN THE INDICTMENT CHARGING PETITIONER WITH THE SAME DRUG AMOUNT IN COUNT ONE OF CONSPIRACY AND COUNT THREE OF POSSESSION WITH INTENT TO DISTRIBUTE IN EXCESS OF 500 GRAMS OF COCAINE,

AND COUNT FOUR POSSESSION OF A FIREARM IN
FURTHERANCE OF A DRUG TRAFFICKING CRIME.

10. APPELLATE COUNSEL WAS INEFFECTIVE FOR
FAILING TO RAISE ON APPEAL MERITORIOUS CLAIMS
OF TRIAL COUNSEL'S CONFLICT OF INTEREST AND
PROSECUTORIAL MISCONDUCT.

11. TRIAL COUNSEL WAS INEFFEC11VE FOR FAILING TO
OBJECT TO SENTENCING ENHANCEMENT FOR FIREARM
WHERE THE INDICTMENT WAS DEFECTIVE IN
FURTHERENCE OF A DRUG TRAFFICKING CRIME.

12. THE SENTENCING STRUCTURE UNDER 21 U.S.C. § 841,
§ 851, AND THE FEDERAL SENTENCING GUIDELINES FOR
THE TREATMENT OF COCAINE VIOLATES THE EIGHTH
AMENDMENT'S PROHIBITION AGAINST CRUEL AND
UNUSUAL PUNISHMENT.

13. TRIAL COUNSEL FAILED TO REQUEST TO INTERVIEW
THE GOVERNMENT'S INFORMANT WHO HELD
EXCULPATORY INFORMAITON

14. TRIAL COUNSEL'S THREATS TO WITHDRAW AS
COUNSEL SHOWS THAT HE HAD A CONFLICT OF
INTEREST IN REPRESENTING THE PETITIONER

15. TRIAL COUNSEL FAILED TO CHALLENGE OR OBJECT
TO THE PRESENTENCE REPORT AS TO PRIOR
CONVICITONS AND FAILED TO MAKE FACTUAL
FINDINGS AS TO THE PRIOR CONVICTIONS

16. TRIAL COUNSEL FAILED TO OBJECT TO THE COURT'S
JURY INSTRUCITON [sic] CHARGING PETITIONER WITH
AIDING AND ABETTING WITHOUT THE CHARGE BEING
PRESENTED AT A GRAND JURY PROCEEDING IN ORDER
FOR THE PETITIONER TO PREPARE A DEFENSE

17. TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO
OBJECT TO THE FAILURE TO SUBMIT TO THE JURY A
FINDING OF AIDING AND ABETTING ON THE VERDICT
SHEET

(Amended Motion, Doc. No. 266, PageID 2992-93.)

**Generally Applicable Law**

To obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice,'" *Davis v. United States*, 417 U.S. 333, 346 (1974), *quoting Hill v. United States*, 368 U.S. 424, 428-429 (1962); *see also Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2006). Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process; mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

It is well-established that a § 2255 motion "is not a substitute for a direct appeal." Ray v. United States, 721 F.3d 758, 761(6th Cir. 2013), *quoting Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (*citing United States v. Frady*, 456 U.S. 152, 167-68 (1982).) Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the

6

crime.  *Ray, supra, citing Bousley v. United States,* 523 U.S. 614, 622 (1998) (internal citations omitted).

Most of Thornton's grounds for relief assert ineffective assistance of trial counsel.  The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

> proceeding would have been different. A reasonable probability is
> a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142

F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).

# Analysis

**Ground One: Ineffective Assistance of Trial Counsel: Failure to Investigate**

In his First Ground for Relief, Thornton asserts his trial attorney, Charles Slicer, III,[3] was

ineffective for failure to investigate "exculpatory information in the search warrant (Amended

Motion to Vacate, Doc. No. 266, PageID 2995-97.)(hereinafter "AmMot"). The particular focus

of Thornton's argument is the unidentified person who was also present at 2316 Eastview when

the search warrant was executed. Thornton also notes the information in support of the warrant

was gathered from confidential informants who he claims would have identified that other

person as Nirvana Martin's drug business partner instead of Thornton, contrary to Martin's

testimony at trial.

The record shows that Slicer did attempt to learn the identity of the other person present

by moving to have the identity of the confidential informants disclosed. (Motion, Doc. No. 113).

Judge Rice properly denied that motion under *Roviaro v. United States*, 353 U.S. 53 (1957).

On this claim and all claims except for Grounds Three, Four, Five, and Six, Thornton

neither sought nor received an evidentiary hearing, so there is no additional evidence beyond

---

[3] All claims of ineffective assistance of trial counsel are directed at Slicer.

what was before the court of appeals.

To the extent Thornton claims his attorney did not seek the identity of the other person present or the confidential informant(s), the record refutes this claim. To the extent he seeks to challenge Judge Rice's determination on this question, the issue could have been raised on direct appeal but was not and is therefore forfeited. *United States v. Frady*, 456 U.S. 152 (1982); *Fornash v. Marshall,* 686 F.2d 1179 (6th Cir. 1982). The First Ground for Relief should be dismissed with prejudice.


**Ground Two: Ineffective Assistance for Failure to Interview Government Witnesses Before Trial**

In his Second Ground for Relief, Thornton asserts Slicer was ineffective for failure to interview the Government's witnesses before trial (AmMot, Doc. No. 266, PageID 2997-98). This is not a claim on which Thornton sought or received an evidentiary hearing, so there is no additional evidence beyond what was before the court of appeals. As noted above, ineffective assistance of trial counsel can be proven only by showing prejudice resulted from counsel's errors. Thornton has presented no evidence of how interviewing the Government witnesses would have led to their providing less damaging testimony at trial, to further evidence with which they could have been impeached, or to other witnesses who would have provided credible contrary testimony. In the absence of proof of prejudice, Ground Two should be dismissed with prejudice.

**Ground Three: Ineffective Assistance for Failure to Investigate or Interview Possible Defense Witnesses**

In his Third Ground for Relief, Thornton asserts Slicer provided ineffective assistance of trial counsel by failing to investigate or interview possible defense witnesses (AmMot, Doc. No. 266, PageID 2998-99). The Court conducted an evidentiary hearing on this claim.

Statements by Slicer on the record just before trial corroborate the testimony he gave at the evidentiary hearing: Thornton was uncooperative in providing names and contact information for potential witnesses or even discussing a defense (Summarized at Doc. No. 289, PageID 3735-38). Instead, Thornton was fixated on issues surrounding the search warrant for 2316 Eastview, issues which Judge Rice had resolved in the Spring of 2007. Slicer obtained a number of plea offers from the United States and found Thornton unresponsive, even to the point that a psychological evaluation was conducted just before trial. Slicer's failure to call the particular witnesses discussed at the evidentiary hearing must be viewed in that light.

Thornton asserts Slicer should have called Ghmall Marshall at trial to testify that he and Thornton were engaged in a legitimate business of street sales of clothing and shoes (which would have shown Thornton had a way of supporting himself without being a drug dealer) and that Thornton was a drug abuser (to support the claim that Thornton was at 2316 Eastview when the search warrant was executed to buy drugs from Martin, not to help him sell them, the so-called buyer-seller defense).

Marshall was available at trial and presumably would have given the testimony he presented at the evidentiary hearing. However, Slicer testified that, despite knowing about Marshall, he decided not to call him as a witness for two reasons. First of all, the Government did not make Thornton's income or wealth an issue in the case, so there was no Government case

10

to rebut on this point by showing Thornton had a legitimate source of income. The Government did not try to prove Thornton was a drug dealer by showing he had lots of money, but by direct testimony from his sources of cocaine and from his business partner, Nirvana Martin. At the very most, Marshall's testimony on this issue would have been of marginal relevance.

Second, Marshall's testimony would have undermined the buyer-seller defense because although he was around Thornton thirty hours a week for their business, he had not seen Thornton abuse drugs since watching him smoke crack in 1994 or 1995, before the first of the three predicate felony drug trafficking offenses used to enhance his sentence.

Thornton emphasizes that Slicer decided not to call Marshall without ever speaking to him (Post-Evidentiary Hearing Brief, Doc. No. 286, PageID 3709). That is immaterial, given the substance of what Mr. Marshall testified to at the evidentiary hearing and what Slicer had been told about what Marshall could testify to.

Strategic choices by defense counsel are "virtually unchallengeable." *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001), *quoting Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984). It was a reasonable strategic choice on Slicer's part not to call Mr. Marshall.

Thornton responds to this argument by contending that strategic choices are unchallengeable only if made after thorough investigation of the relevant law and facts. (Petitioner's Post-Hearing Reply Memorandum, Doc. No. 290, PageID 3763, citing *Strickland, supra*, at 690.) Slicer's repeated discussions with Judge Rice about his difficulty getting Thornton to come up with any names of potential witnesses emphasizes the context in which any "thorough" investigation had to be done. Thornton provided Marshall's name only days before trial, apparently during the continuance needed for the psychiatric examination. Given what Thornton apparently told Slicer about testimony Marshall could give, there was no need to waste

11

valuable last-minute preparation time on "investigating" Marshall. If the best Marshall could give is what he testified to at the evidentiary hearing, there was no need to investigate further. His testimony was only arguably relevant (on the clothing vendor business) or contrary to what Thornton hoped (no evidenced of Thornton's drug abuse.)

Thornton also asserts Slicer should have called Nicole Sherrer to testify. Ms. Sherrer is alleged to have accompanied Martin and Thornton on their trip to Florida in January or February 2005. Martin testified the purpose of the trip was to find a cheaper source of cocaine. Allegedly Ms. Sherrer would have testified that the trip was just for fun.

In his Affidavit of January 7, 2011, filed with and in support of his Motion to Vacate, Thornton specifically identified Nicole Sherrer as a witness: "A third witness was Nicole Sherrer (Mr. Martin's ex-girlfriend) who would have contradicted Martin's testimony that I was in some way involved in drug dealing with him." (Doc. No 213-1, PageID 2392-93.) Despite this assertion, Ms. Sherrer did not testify at the evidentiary hearing nor is there any evidence of record that she was subpoenaed or attempted to be subpoenaed. Under those circumstances, Thornton's testimony about what she would have testified to is not credible. Thornton has not proven that the failure to call Ms. Sherrer was in any way prejudicial to his case.

Ground Three should be dismissed with prejudice.

**Ground Four: Ineffective Assistance for Failure to Prepare or Allow Petitioner to Testify at Trial**

In his Fourth Ground for Relief, Thornton asserts Slicer provided ineffective assistance of trial counsel by refusing to allow Thornton to testify in his own defense and thereby created a conflict of interest (AmMot. Doc. No. 266, PageID 2999-3001). The Court conducted an

evidentiary hearing on this claim.

In some phrasings of this claim, Thornton has asserted that Slicer somehow prevented him from testifying. The trial record completely belies that claim. Judge Rice conducted a thorough colloquy with Thornton about whether or not he would testify and that the decision was his alone (Tr. for 10/12/2007, Doc. No. 195, PageID 818-22).

In other phrasings, Thornton treats this as a claim that Slicer did not discuss with him the pros and cons of his taking the stand. That is also belied by Thornton's admission on the record (Tr., Doc. No. 195, PageID 2013). It is also contradicted by Slicer's testimony that he talked extensively with Thornton about what he could testify to and possible defenses (Evid Hrg. Tr., Doc. No. 281, p. 286-87).

Thornton himself testified at the evidentiary hearing about what he could have testified to at trial if he had been called. He would have been able to testify about his prior drug use and the treatment he received for it. However, much of that treatment was court-imposed as conditions for probation or parole for prior drug convictions. Certainly the prior felony convictions would have come out because they were available to the United States for impeachment. It is difficult to imagine more damaging testimony in a drug conspiracy trial than three prior convictions for drug offenses which involved distribution level quantities and firearms.

While Mr. Thornton gave some detail at the evidentiary hearing about what he could have said about his prior drug use, he would have had very little convincing to say to contradict the Government's case – just that he did not know most of the witnesses who testified they were drug sources for him and Martin. With at least one of those witnesses, David Sanchez, there was an independent Government witness, Michael Aurrichio, who had seen them together at a time Sanchez indicated he was selling to Thornton. In sum, for Thornton's testimony to have affected

13

the outcome, the jury would have had to believe his conclusory denials against the detailed assertions of the Government witnesses.  As Thornton notes in argument, there was no corroborative testimony about his drug use (Post Evidentiary Hearing Brief, Doc. No. 286, PageID 3720), so it would have been Thornton's word alone – the uncorroborated drug-conviction-impeached conclusory word – against the detailed testimony of the Government witnesses.  Thornton argues all of these witnesses were impeachable.  *Id*. at PageID 3722.  But so was Thornton.

Slicer's advice that he not take the stand, advice Thornton told Judge Rice he agreed with, was excellent.  It is the advice the Magistrate Judge would expect any competent defense attorney to give to a person in Thornton's position.  And Thornton has certainly not proven any prejudice from taking the advice.

Ground Four should be dismissed with prejudice.


**Ground Five:  Ineffective Assistance by Presenting a Buyer and Seller Relationship Defense Without Preparation or Evidence**

In his Fifth Ground for Relief, Thornton asserts Slicer provided ineffective assistance of trial counsel by presenting a buyer-seller defense without adequate preparation and without presenting any evidence (AmMot, Doc. No. 266, PageID 3001-03).  The Court conducted an evidentiary hearing on this claim.

According to the testimony, 2316 Eastview was a drug house where people entered, stayed for a  few minutes, and left.  As Judge Rice found in his suppression decision, the initial search produced no indicia that anyone lived there.  So it was plausible to argue that a person who was there on the night of the raid was just a customer, and that is what Slicer argued.

14

Thornton asserts Slicer should have produced evidence.  He asserts his cousin and street vendor partner Marshall could have testified he was a drug user.  But Marshall gave no such testimony when called at the evidentiary hearing.  He said he had only seen Thornton use drugs once, more than eleven years before trial.

Thornton himself testified at the evidentiary hearing that he was only there at the time of the raid as a customer and presumably would have testified to the same effect at trial.  For the reasons given with respect to Ground Four, his testimony is not credible, i.e., the jury was very unlikely to have believed him.  In addition to the reasons given under Ground Four, he would have had to explain the $3,400 and four cellphones seized from his person, evidence Slicer had successfully kept out of the trial by the motion to suppress.

Thornton did not offer any other witness who could have testified that his purpose in being at Eastview was to buy a consumer quantity of cocaine.  Under the circumstances, it was probably better to present the defense by arguing that as a supportable inference from the Government's case than by presenting the evidence Thornton now says was available.

Ground Five should be dismissed with prejudice.


**Ground Six:  Ineffective Assistance by Threatening to Withdraw If Thornton Proceeded to Trial**

In his Sixth Ground for Relief, Thornton asserts Slicer provided ineffective assistance of trial counsel by threatening to withdraw if Thornton proceeded to trial (AmMot, Doc. No. 266, PageID 3003-04).  The Court conducted an evidentiary hearing on this claim.

Thornton's evidence on Ground Six is a statement he made in his original Affidavit that Slicer "even threatened to withdraw from the case."  (AmMot., Doc. No. 266, *citing* Thornton

15

Affidavit of January 7, 2011, attached to Doc. No. 266 as Ex. A.)  Additionally, Thornton said on the record in open court that Slicer had told him if he did not take a plea he was on his own.  *Id.*, Ex. D, PageID 3046.  Slicer directly contradicted that statement moments later. *Id.* at PageID 3048.  Thornton repeated that allegation under oath at the evidentiary hearing.  (Evid. Hrg. Tr., Doc. No. 280, PageID 3112.)  But Slicer also repeated his denial under oath.  *Id.* at PageID 3329. The Magistrate Judge finds Slicer's denial credible, given his statement that he knew Judge Rice would not force Thornton to proceed without an attorney.  *Id.* .

Thornton failed to provide persuasive evidence on Ground Six and it should be dismissed with prejudice.


**Ground Seven:  Ineffective Assistance for Failure by Failure to Object to a Defective Indictment Regarding the Conspiracy Count**

In his Seventh Ground for Relief, Thornton claims Slicer provided ineffective assistance when he failed to complain of a variance in the conspiracy count of the Indictment (AmMot, Doc. No. 266, PageID 3004-05).  This is not a claim on which Thornton sought or received an evidentiary hearing, so there is no additional evidence beyond what was before the court of appeals.

Thornton asserts that a government agent cannot be a co-conspirator, relying on *United States v. Pennell*, 737 F.2d 521 (6th Cir. 1984).  He asserts that Nirvana Martin became a government agent upon his arrest,

The Indictment charges in Count One that

> Beginning on an exact date unknown, but in or about July 2005, and continuing through the date of this Indictment, in the Southern District of Ohio and elsewhere, defendants NIRVANA S. MARTIN and MARK J. THORNTON did knowingly, willfully,

> intentionally and unlawfully combine, conspire, confederate and agree with each other and with others both known and unknown to the Grand Jury, to knowingly and intentionally possess with the intent to distribute in excess of 5 kilograms of Cocaine, a Schedule II controlled substance, and in excess of 50 grams of Cocaine Base (commonly referred to as "Crack"), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 84l{a)(l) and (b)(l)(A).

> All in violation of Title 21, United States Codes,§ 846.

(Doc. No. 20, PageID 35.) *Pennell* holds that proof of an agreement between a defendant and a government agent or informer will not support a conspiracy conviction. 737 F. 2d at 536. But the agreement the Government proved to the jury's satisfaction was between Thornton and Martin **before** they were arrested. Arrest warrants on the Complaint were issued as to both Martin and Thornton on October 19, 2005 (Doc. No. 3). Martin was arrested at once and appointed counsel. Thornton was not arrested until February 13, 2006 (Doc. No. 40). Martin did not reach a plea agreement with the United States, in which he agreed to provide substantial assistance, until November 22, 2006, well after the period covered by the Indictment (Doc. No. 57). *Pennell* does not prevent conviction for conspiring with a person who agrees to cooperate with the Government after he has been caught.

In the second part of this Ground for Relief, Thornton seems to be arguing that there was a variance between the charge in Count One (conspiracy between Martin and Thornton) and the proof at trial (proof of multiple conspiracies). A variance occurs when the charges and the evidence do not correspond. The appropriate standard for evaluating a variance claim is taken from *Berger v. United States*, 295 U.S. 78 (1935):

> The true inquiry . . . is not whether there has been a variance in proof, but whether there has been such a variance as to "affect the substantial rights" of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges

17

against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

295 U.S. at 82.   However, Thornton makes no references to the trial record to show it proved multiple conspiracies instead of one proved nor even an argument about who else was involved in the multiple conspiracies.

Since there was neither a defect in the Indictment nor a variance between the charge and the evidence, Ground Seven should be dismissed with prejudice.

## Ground Eight:  Ineffective Assistance for Failure to Request a Sears Rule Instruction

In his Eighth Ground for Relief, Thornton reiterates his claim that Martin was a Government agent and one cannot be convicted of conspiring with such a person (AmMot, Doc. No. 266, PageID 3005-06).  This claim is without merit in this case for the reasons given above as to the first part of Ground Seven.  Ground Eight should therefore be dismissed with prejudice.

## Ground Nine:  Ineffective Assistance for Failure to Object to Multiplicity in the Indictment

In his Ninth Ground for Relief, Thornton claims Slicer provided ineffective assistance of trial counsel when he did not object that the Indictment was duplicitous or multiplicitous (AmMot. Doc. No. 266, PageID 3006-07).  Thornton asserts the Indictment was multiplicitous because it charged him with the same crime in Counts One, Three, and Five.

An indictment is multiplicitous when it charges the same crime in different counts. LaFave, Israel, King & Kerr, Criminal Procedure 3d § 19.3(c).  It is plain on the face of the

18

statutes involved that the offenses charged in Counts One, Three, and Five each requires proof of an element not required for the other. Count One requires proof of an agreement to distribute drugs. Count Three requires possession of cocaine. One need not possess cocaine personally in order to conspire to distribute it. Count Five requires proof of possession of a firearm, an element not required for either Count One or Count Three.

Because the Indictment is not multiplicitous, it was not ineffective assistance of trial counsel to fail to assert that it was. The Ninth Ground for Relief should be dismissed with prejudice.

**Ground Ten: Ineffective Assistance of Appellate Counsel**

In his Eleventh Ground for Relief, Thornton asserts he received ineffective assistance of appellate counsel in that his appellate counsel did not raise claims of trial counsels' asserted conflict of interest and prosecutorial misconduct (AmMot. Doc. No. 266, PageID 3007-08).

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of

the appeal. *Id*., *citing Wilson*. If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson*. The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); *see Smith v. Murray*, 477 U.S. 527 (1986). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674(6th Cir. 2000), *citing Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir.

2000)(*citing Strickland*).  "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented."  *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir, 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

For the reasons given above with respect to Grounds for Relief Three, Four, Five, and Six, Slicer was not ineffective in the manner Thornton now asserts should have been raised on appeal.

Thornton asserts prosecutorial misconduct in threatening him with life imprisonment if he did not plead guilty, ineffective assistance of trial counsel for not objecting to the misconduct, and ineffective assistance of appellate counsel for not having raised both as error on appeal.  To prove this supposed threat, Thornton reproduces two pages of transcript without advising the Court which transcript they were taken from. They appear to be from a conference held shortly after the Government announced its intention to file an Information under 21 U.S.C. § 851 which enhances the potential sentence on Count One to life imprisonment..

No prosecutorial misconduct has been shown.  It is a perfectly appropriate exercise of prosecutorial discretion to file an Information under § 851 when the facts warrant doing so.  The Congressional mandate to impose a life sentence upon a conviction enhanced under § 851 for prior felony drug convictions evinces a strong public interest in filing such informations when they are warranted by the facts.  Moreover, the prosecutor at Thornton's trial, Vipal Patel, strongly denied making any threats to Defendant.  (Transcript, Doc. No. 187, PageID 1097.)  On this state of the record, Thornton would have been unable to prove ineffective assistance of trial counsel for failure to claim prosecutorial misconduct.  It was, therefore, not ineffective assistance of appellate counsel to fail to raise that claim on appeal and the Tenth Ground for Relief should

be dismissed with prejudice.


**Ground Eleven: Ineffective Assistance for Failure to Object to Sentencing Enhancement for Firearm**

In his Eleventh Ground for Relief, Thornton claims Slicer provided ineffective assistance of trial counsel when he did not object to the fact that the Indictment "failed to state acts in furtherance of the crime charged [in Count Five] that Petitioner performed with respect to his aiding and abetting offense." (AmMot., Doc. No. 266, PageID 3009-10.)

As the United States argues in response, the Indictment in Count Five fully alleges all elements of a violation of 18 U.S.C. § 924(c), to wit,

> On or about October 12, 2005, in the Southern District of Ohio, defendant MARK THORNTON knowingly possessed a firearm, namely, an Israel Military Industries Desert Eagle 9 mm semiautomatic pistol, serial number 20303989, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, Conspiracy to Possess in excess of 5 kilograms of Cocaine and in excess of 50 grams of Cocaine Base (commonly referred to as "Crack"), in violation of Title 21, United States Code,§§ 841(a)(l) and (b)(l){A) and 846.
>
> In violation of Title 18, United States Code,§ 924(c)(1)(A)(i), and *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) (*Pinkerton* liability).

(Indictment, Doc. No. 20, PageID 37.) Thornton identifies no defect in Count Five that Slicer could have effectively raised. Ground Eleven should therefore be dismissed with prejudice.


**Ground Twelve: Cruel and Unusual Punishment**

In his Twelfth Ground for Relief, Thornton argues that "the sentencing structure under 21 U.S.C. § 841, § 851, and the federal sentencing guidelines for the treatment of cocaine violates the Eighth Amendment's prohibition against cruel and unusual punishment." (AmMot. Doc. No. 266, PageID 3010-21.)

This issue could have been raised on direct appeal but was not and is therefore forfeited. *United States v. Frady*, 456 U.S. 152 (1982); *Fornash v. Marshall,* 686 F.2d 1179 (6th Cir. 1982). The Twelfth Ground for Relief should be dismissed with prejudice.

### Ground Thirteen:  Ineffective Assistance by Failure to Interview the Informant

In Ground Thirteen Thornton asserts Slicer provided ineffective assistance of trial counsel by failing to seek to interview the Government's informant, i.e., the person or persons who provided information on which the issuance of a search warrant was based. (AmMot., Doc. No. 266, PageID 3021-23.)  This claim is completely dealt with under Ground One.  Ground Thirteen should be dismissed with prejudice on the same basis.

### Ground Fourteen:  Ineffective Assistance by Threatening to Withdraw as Counsel

In his Fourteenth Ground for Relief, Thornton reiterates claims he made of conflict of interest in a *pro se* pre-sentence claim of ineffective assistance of trial counsel (AmMot. Doc. No. 266, PageID 3023-24).  The prior motion is at Doc. No. 270 and was overruled by Judge Rice on the basis of the hearing held on February 28, 2008[4] (Notation Order denying Doc. No.

---

[4] The notation order indicates that the matter was dealt with in the February 25 hearing, but review of the transcript shows the *pro se* ineffective assistance of trial counsel motion was dealt with on the 28th.

270).  The oral ruling is transcribed at Doc. No. 184, PageID 1016-23.  Nothing presented in the Amended Motion persuades the Court that there was any error in overruling Thornton's *pro se* motion.  Ground Fourteen should therefore be dismissed with prejudice.


**Ground Fifteen:  Ineffective Assistance by Failure to Challenge the Prior Convictions**


In his Fifteenth Ground for Relief, Thornton claims Slicer provided ineffective assistance of trial counsel when he failed to challenge the prior felony drug convictions on which the § 851 enhancement was based (AmMot., Doc. No. 266, PageID 3024-26).

The Government filed the § 851 Information on September 24, 2007, charging the following prior felony drug convictions:

1.      Drug abuse, a fourth degree felony, on November 19, 1995, in Montgomery County Common Pleas Case No. 95-cr-1860.

2.      Drug abuse, a fourth degree felony, on July 24, 1996, in Montgomery County Common Pleas Case No. 96-cr-1699.

3.      Possession of crack cocaine in an amount greater than ten but less than twenty-five grams, a felony of the second degree, on September 20, 2000.

(Information, Doc. No. 135, PageID 573-74.)

Judge Rice found the United States had met its burden under § 851 on the basis of a hearing in open court on February 14, 2008 (Decision and Entry, Doc. No. 167, PageID 854). The hearing transcript comprises some sixty-three pages of testimony by Government witnesses and cross-examination by Slicer, all centering on proving that Mr. Thornton was the same person who had been convicted in the three prior cases.  Government counsel noted that Slicer's

objections to the § 851 enhancement portion of the Presentence Investigation Report had, instead, claimed that the prior convictions were unconstitutionally invalid (Tr. Doc. No. 182, PageID 969). Judge Rice made the requisite findings on the record. *Id.* at 971-72. Judge Rice also noted on the record that all three of the Montgomery County convictions had occurred more than five years before September 24, 2007, and Thornton was therefore precluded from contesting their validity under 21 U.S.C. § 851(e). *Id.* at PageID 973.

Thornton now argues he "was denied the opportunity to rebut the information used to enhance his sentence according to sub Section 851(E) [sic]." If that is intended to raise a claim about the process by which the enhancement Information was handled, it is forfeited by failure to raise it on direct appeal. If it is a claim that Slicer was somehow ineffective for failing to present rebuttal, Thornton has failed to show what rebuttal exists. If it is a claim that 21 U.S.C. § 851(e) is unconstitutional because it limits the opportunity to prove prior convictions more than five years old are invalid, that claim is forfeited by failure to raise it on direct appeal.

Thornton asserts Judge Rice "failed to make any factual findings regarding the prior convictions under § 851." Although the findings are summary,[5] they are spread upon the record at Doc. No. 182, PageID 971. Nothing in the statute requires any more detail in the findings.

Thornton relies on *United States v. Caswell*, 456 F.3d 652 (6th Cir. 2006), as requiring findings regarding the circumstances of the prior convictions. That case has nothing to do with a § 851 enhancement; § 851 is mentioned nowhere in the decision. He also relies on *Shephard v. United States*, 544 U.S. 13 (2005). *Shephard* decided how a district court may determine the character of a prior conviction for purposes the Armed Career Criminal Act; it also had nothing to do with findings under § 851.

---

[5] Judge Rice found beyond a reasonable doubt that the prior convictions occurred, that they were for felony drug offenses, and that Thornton was the person convicted. Tr., Doc. No. 182, PageID 971.

Finally, Thornton relies on *United States v. White*, 492 F.3d 380 (6th Cir. 2007). There the circuit court held that defendants had sufficiently disputed the loss calculations made in a presentence report to require the district court to find the facts pursuant to Fed. R. Crim. P. 32(i)(3)(B). *Id.* at 414. Thornton's objection to the § 851 enhancement reads in its entirety "An objection to the 851 enhancement and to contest its applicability." (Objections to Presentence Investigation Report, Doc. No. 164, PageID 838.) Thus the Objections do not raise any specific claims about the facts or circumstances of the prior felony drug convictions and Judge Rice's factual findings on the record at the § 851 hearing plainly satisfy the requirements of Fed. R. Crim. P. 32(1)(3)(B).

Ground for Relief Fifteen is without merit and should be dismissed with prejudice.

## Ground Sixteen: Ineffective Assistance for Failure to Object to the Aiding and Abetting Jury Instruction

In his Sixteenth Ground for Relief, Thornton asserts Slicer provided ineffective assistance at trial by not objecting to the jury instruction on aiding and abetting (AmMot. Doc. No. 266, PageID 3026-28). However, the very portion of the transcript attached to the Amended Motion belies that claim: Slicer did object (Tr. page 871, reproduced at Ex. J. to Doc. No. 266, PageID 3070). As an ineffective assistance of trial counsel claim, the Sixteenth Ground fails for lack of a factual predicate.

Thornton may be trying to use an ineffective assistance of trial counsel claim here as a back door to asserting the Indictment was defective (*See* AmMot, Doc. No. 266, PageID 3027). Any such claim is forfeited by failure to raise it on direct appeal, since it depends entirely on matter of record at the time of appeal. *United States v. Frady*, 456 U.S. 152 (1982); *Fornash v.*

*Marshall,* 686 F.2d 1179 (6th Cir. 1982).

Ground Sixteen should be dismissed with prejudice.


**Ground Seventeen: Ineffective Assistance by Failing to Object to Absence of a Verdict Form for Aiding and Abetting**

In his Seventeenth Ground for Relief, Thornton objects that Slicer failed to object "to the Government's constructive amendment of the indictment" (AmMot. Doc. No. 266, PageID 3028). As noted in the Government's Opposition to Defendant's Amended Motion to Vacate, this Ground for Relief also lacks a factual predicate in that Slicer did object (Tr. for 10/16/2007, Doc. No. 197, PageID 893).

To the extent Thornton is attempting to argue the Indictment was defective for failure to include a charge of violating the aiding and abetting statute, that claim was available on direct appeal but not made and therefore forfeited. *Frady, supra.*


**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Amended Motion to Vacate be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this conclusion, Thornton should be denied an certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis.*

June 23, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).

This § 2255 case was filed on April 8, 2011, and is now two months beyond the presumptive three-year time limit for civil cases adopted by the Civil Justice Reform Act of 1990. Most of that time has been occasioned by extensions to accommodate Thornton's desire to amend, to investigate, to prepare, and to file briefs. Because of the age of this matter, **NO EXTENSIONS OF THE TIME TO FILE OBJECTIONS WILL BE GRANTED.**